UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Matthew A. Burgess and      :
Lili C. Burgess,            :
        Plaintiffs,         :
                            :
     v.                     :       File No. 2:05-CV-98
                            :
United States Department    :
of Education, The United    :
States Department of        :
Education Federal Student   :
Aid Division,               :
        Defendants.         :

<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>
(Paper 15)

Plaintiff Matthew Burgess claims that he began taking out federal student loans in 1988.  In 2003, Mr. Burgess disputed the defendants' calculation of the balance due on those loans.  The dispute was allegedly resolved, and Mr. Burgess paid the agreed upon balance. Nonetheless, the government allegedly engaged in collection activity to secure additional money, including withholding money from the tax refund being sent to Mr. Burgess and his wife, plaintiff Lili Burgess.  The Burgesses, each proceeding *pro se*, have filed suit asking the Court, *inter alia*, for a declaratory judgment with respect to the amount due, and for injunctive relief in the form of rectifying the damage to their credit.  The

Burgesses are also seeking damages for alleged constitutional, statutory and tort violations.

The defendants have moved to dismiss part of the first Count and all of the remaining Counts in the Burgesses' complaint. (Paper 15). In support of their motion, the defendants argue sovereign immunity, failure to exhaust under the Federal Tort Claims Act ("FTCA"), and federal exemption under the Fair Debt Collection Practices Act ("FTCPA"). The defendants also claim that injunctive relief is barred by statute, and that Lili Burgess may seek relief from the Internal Revenue Service. For the reasons set forth below, I recommend that the defendants' motion to dismiss be GRANTED.

<u>Factual Background</u>

For purposes of the pending motion to dismiss, the allegation in the Burgesses' complaint will be accepted as true. As noted above, Matthew Burgess began taking out federal student loans in 1988. Since that time, all loans in question have been administered by the California Student Aid Commission.[1] On or about

---

[1] The complaint alleges that "the defendants jointly and severally designated, constituted, created and appointed the California Student Aid Commission and others designated by said California Student Aid Commission as their agent(s) and designated representative(s) . . . ." (Paper 1 at 2). Because this California commission and others appear to have acted on

September 30, 2003, a dispute arose between Mr. Burgess
and the defendants as to the amount that was outstanding
on his loan obligation.  "After discussion, negotiation
and good faith reliance on representation by the
defendants' agent(s)," Mr. Burgess paid an agreed upon
amount as "full and final settlement of said dispute."
(Paper 1 at 2).  The check was made payable to the
California Student Aid Commission in the amount of
$3,429.31.  (Paper 1-3 at 1).  On the backside of the
check, Mr. Burgess wrote: "This check is accepted and
endorsed as full and final satisfaction of any and all
indebtedness between Matthew H. Burgess and payee hereof
and payee's agents, successors and assigns."  The check
arrived on October 3, 2003, and was deposited on October
9, 2003.  Id. at 2, 3.

On same day that the check was deposited, the
defendants sent Mr. Burgess a letter informing him that
although the funds would be applied to his balance, the
check did not discharge his loans.  Id. at 4.  The letter
stated that

[o]ne of the legal requirements for such a

behalf of the defendants, all such agents and the defendants will be
referred to throughout this memorandum as "defendants."

restricted payment to constitute an accord and
satisfaction, i.e., settlement of the
outstanding obligation, is the existence of a
legitimate dispute over the correct amount of
the outstanding balance.  Our records do not
indicate that you ever disputed the accuracy of
the outstanding balance.  Therefore, acceptance
of your check does not constitute an accord and
satisfaction and does not discharge your student
loan(s) or relieve you of your obligation to
repay the outstanding balance thereon.

Id.  The complaint does not allege that Mr. Burgess took
any action at that time to contest the claims set forth
in this letter.

Eighteen months later, in March 2005, the defendants
notified Mr. Burgess that they had assigned his defaulted
student loan(s) to a collection agency.  The defendants
also informed him that "failure to establish an
appropriate repayment arrangement and remit agreed upon
payments may lead to additional collection activities,"
and that those activities could include interception of
his federal and state income tax refunds.  (Paper 1-3 at
5).  On April 18, 2005, the Burgesses filed their
complaint in this Court.  (Paper 1).

The complaint alleges that before Mr. Burgess
received the March 2005 letter, the defendants "had
already caused the Internal Revenue Service of the United

4

States to withhold the sum of $1,228.24 from tax refunds that were due jointly plaintiffs." (Paper 1 at 4). The Burgesses allege that prior to this offset, they were given no notice or opportunity to be heard. Lili Burgess further alleges that the defendants had no claim against her or her right to a full tax refund.

The complaint consists of six counts. Count 1 requests a declaratory judgment setting forth: (1) the status of Matthew Burgess's student loan debt; (2) the defendants' rights to any further recovery on that debt; (3) Lili Burgess's rights with respect to her tax refund; (4) Lili Burgess's right to be given notice and an opportunity to be heard prior to "seizure of her property interest in said tax refund by the defendants"; and (5) any further relief to which the plaintiffs are entitled. Count 2 claims violations of the Fair Debt Collection Practices Act. Count 3 alleges the tort of conversion of property. Count 4 claims that Lili Burgess was deprived of her property without due process. In Count 5, Lili Burgess requests mandatory injunctive relief in the form of an order requiring the defendants to contact various credit reporting agencies and inform them that, *inter*

*alia*, the reporting of the debt was wrong and that all indebtedness had, in fact, been paid.  The final count, Count 6, alleges defamation of credit.

Discussion

I.  Motion to Dismiss Standard

On a motion to dismiss, "a court has to consider the legal sufficiency of the claim as stated in the complaint and is not to weigh facts underlying the claim or the merits of the case."  Esden v. Bank of Boston, 5 F. Supp. 2d 214, 216 (D. Vt. 1998) (citing Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)).  "In ruling on such a motion, the court must look only to the allegations in the complaint and any documents attached to or incorporated by reference in the complaint."  Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 138 (2d Cir. 1999).  Morever, when a motion to dismiss is filed pursuant to Fed. R. Civ. P. 12(b)(6), the court must assume all well-pleaded factual allegations to be true and draw reasonable inferences in the light most favorable to the plaintiff.  See Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).  Dismissal is impermissible

unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Flores v. S. Peru Copper Corp., 343 F.3d 140, 148 (2d Cir. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Similar to a motion for failure to state a claim under Rule 12(b)(6), when a court reviews a motion for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), it accepts as true all material factual allegations in the complaint. Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd., 968 F.2d 196, 198 (2d Cir. 1992) (internal citations omitted). The plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists, and "a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it 'lacks the statutory or constitutional power to adjudicate it.'" Aurecchione v. Schoolman Transp. System, Inc., 426 F.3d 635, 638 (2d Cir. 2005) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). In contrast to a 12(b)(6) motion for failure to state a claim, when deciding a 12(b)(1) motion for dismissal based on lack of

subject matter jurisdiction, the court should not draw "argumentative inferences" in favor of the party asserting jurisdiction.  See Atlantic Mut., 968 F.2d at 198 (internal citations omitted).

II.  Relevant Statutes

The defendants submit that this case involves two federal programs, the student loan program established by the Higher Education Act of 1965 ("HEA"), and the Treasury Offset Program ("TOP").  The HEA, 20 U.S.C. §§ 1071, et seq., established the Federal Family Education Loan Program ("FFELP").  Under the FFELP, private lenders use their own funds to make loans to qualified borrowers. These loans are guaranteed by state agencies or private non-profit organizations and are reinsured and often subsidized by the U.S. Department of Education ("DOE"). See 20 U.S.C. §§ 1078, 1087-1.  In the event of a borrower's default in repaying the loan, the guaranty agency pays the holder of the loan, which may be either the original lender or another eligible financial institution to whom the loan was assigned, and takes assignment of the loan.  See 20 U.S.C. § 1078(b); 34 C.F.R. § 682.401(b)(9).  The guaranty agency may then ask

the DOE for reimbursement.  See 20 U.S.C. § 1078(c); 34
C.F.R. §§ 682.404, 682.406.  After the guarantor has been
reimbursed, it must try to collect the debt from the
debtor.  20 U.S.C. § 1078(c)(2)(A); 34 C.F.R. §
682.410(b)(6).  If the guarantor is unable to obtain
payment from the debtor, the loan is assigned to the DOE.
34 C.F.R. § 682.409(a) and (c)(1).

The TOP is a centralized debt collection program,
authorized pursuant to the Debt Collection Improvement
Act ("DCIA"), that has been developed and run by the
United States Department of Treasury ("Treasury
Department") to help federal agencies collect delinquent
debts owed to the federal government.  See 31 U.S.C. §§
3716, et seq.  For certification under the TOP, the DOE
is required to report all legally enforceable debts.  See
31 U.S.C. § 3720A(a); 31 U.S.C. § 3716(c)(6).  The TOP
also requires federal agencies to give the debtor notice
and an opportunity to be heard as to the validity of the
debt prior to certifying to the Treasury Department that
the debt is eligible for offset.  See 31 U.S.C. §§
3716(a), 3720A(b).  When a debtor is entitled to a
federal tax refund, the Treasury Department is required

to offset the refund by the debts owed the United States.
See 31 U.S.C. § 3720A.

III.  Waivers of Sovereign Immunity

The defendants' arguments in support of dismissal
rely, in substantial part, upon their general immunity
from suit.  Absent a waiver, the United States government
and its agencies are immune from suit by virtue of the
government's sovereign immunity.  See F.D.I.C. v. Meyer,
510 U.S. 471, 475 (1994).  Any waiver of sovereign
immunity must be expressed in unequivocal terms.  See
United States Dep't of Energy v. Ohio, 503 U.S. 607, 615
(1992).  If the defendants have sovereign immunity, the
Court has no jurisdiction to hear the case.  See Meyer,
510 U.S. at 475.

The HEA provides two express waivers of sovereign
immunity.  First, Section 1082(a)(2) of the HEA allows
the Secretary of Education to "sue and be sued" with
respect to the performance of duties under the Act.  20
U.S.C. § 1082(a)(2).  This waiver does not extend to
injunctive relief, as § 1082(a)(2) prohibits injunctions
against the Secretary except where he exercises powers
that are clearly outside his statutory authority.  Id.;

see Calise Beauty Sch., Inc. v. Riley, 941 F. Supp. 425,
428 (S.D.N.Y. 1996) (noting that "[o]n its face, Section
1082 flatly prohibits the issuance of any injunction
against the Secretary in relation to his powers and
duties under the HEA" and collecting cases that have
strictly applied the prohibitions of § 1082).  A "sue and
be sued" clause also does not trump the general rule that
federal agencies cannot be sued in a damages action
alleging constitutional violations.  Meyer, 510 U.S. at
484-86.

     The second waiver under Section 1082 states that the
Federal Tort Claims Act, 28 U.S.C. § 2679 ("FTCA"),
applies to suits under the HEA.  The FTCA waives the
sovereign immunity of the United States for tort claims
subject to the exceptions in 28 U.S.C. § 2680.  See 28
U.S.C. §§ 2674, 2680.[2]  To assert a claim under the FTCA,
a plaintiff must exhaust the applicable administrative
remedies prior to filing suit.  See 28 U.S.C. § 2675(a).

IV.  The Defendants' Motion to Dismiss

     The defendants' motion to dismiss contends that most
of the Burgesses' claims are barred.  The only claim that

---

[2]  The defendants have not argued that any exceptions under § 2680 are
applicable here.

11

is not a part of their motion is Matthew Burgess's
request for a declaratory judgment.  As stated above, the
defendants rely primarily upon the government's sovereign
immunity and the statutory limitations on lawsuits
against government agencies.  The defendants also suggest
that Lili Burgess's claims against DOE are misplaced.
The Court will address the arguments with respect to each
count of the complaint, in turn, below.

   A.  Count 1: Lili Burgess's Declaratory Relief Claim

   In Count 1, Lili Burgess asks the Court to issue a
declaratory judgment with respect to her right to a full
tax refund, as well as her rights to notice and a hearing
prior to the seizure of her tax refund.  In response, the
defendants argue that these claims should be brought up
with the Treasury Department, and not the DOE, since it
is the Treasury Department that actually withholds the
funds.  "DOE has nothing to do with measuring the amount
of tax refund to which the debtor might otherwise be
entitled, or with discerning whether a debtor's non-
debtor spouse has an interest in the tax refund."  (Paper
15 at 9).  The defendants also contend that Ms. Burgess
has an administrative remedy by means of an IRS form that

specifically addresses her situation as an "injured spouse," and informs her how to recover her interest in the refund.  (Paper 15 at 10-11, citing IRS Form 8379).

Based upon the statutory scheme described above, it does not appear that the DOE would have any knowledge of a spouse's existence prior to certifying a debt to the Treasury Department.  DOE records would show only that Mr. Burgess owed a debt.  It is the Treasury Department that performs the tax refund offset, and only at that stage would a government agency become aware of the existence of a joint filer.  Therefore, Ms. Burgess's claim against the DOE appears to be misplaced.

A similar analysis applies to Ms. Burgess's rights to notice and a hearing.  The TOP requires federal agencies to provide a *debtor* with notice and an opportunity to be heard.  The DOE had no obligation to provide a non-debtor spouse with such notice.  Whether the Treasury Department had a duty to provide notice and a hearing to Ms. Burgess is not currently before the Court, since the Treasury Department is not a party.  I therefore recommend that Ms. Burgess's claims under Count 1 be DISMISSED without prejudice.

B.   Count 2: Violation of the FDCPA

The Burgesses next claim that the defendants violated the FDCPA.  Specifically, the complaint alleges that the Burgesses notified the defendants "and their agents and servants" in writing to cease and desist from contacting them by telephone with respect to the alleged debt.  Despite these written requests, the defendants (through their agents) continued to call Mr. Burgess at work and at home.

Again, this claim may have been brought against the wrong defendants.  The FDCPA specifically excludes "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties."  15 U.S.C. § 1692a(6)(c).  The government argues only that "to the extent the conduct alleged in the complaint is imputed to the Government" the FDCPA does not apply. (Paper 15 at 10).  Whether or not the actions of private debt collectors may have violated the FDCPA is not currently before the Court, and the Court expresses no opinion as to the potential liability of those private entities.  It is clear, however, that an action under the

14

FDCPA cannot be brought against the defendants named in this case.  Count 2 of the complaint should, therefore, be DISMISSED without prejudice.

C.  Count 3: Conversion

Count 3 of the complaint alleges that the defendants wrongfully converted the Burgesses' tax returns. Conversion is a tort, and a conversion action against the federal government must be brought pursuant to the terms of the FTCA.  See Johnson v. Smithsonian Inst., 189 F.3d 180, 189 (2d Cir. 1999).  The FTCA requires, in relevant part, that "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied."  28 U.S.C. § 2675(a). The FTCA also requires that the claim be presented "in writing to the appropriate Federal agency within two years after such claim accrues . . . ."  28 U.S.C. § 2401(b).  This writing must include a request for damages in a sum certain.  28 C.F.R. § 14.2.

The notice requirement is strictly construed. United States v. Kubrick, 444 U.S. 111, 113, 117-18 (1979).  It must be applied equally to all litigants regardless of whether they are represented by counsel or

15

proceeding *pro se*.  <u>Adeleke v. United States</u>, 355 F.3d 144, 153 (2d Cir. 2004).  Compliance with the FTCA procedure is jurisdictional and cannot be waived.  <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993); <u>Robinson v. Overseas Military Sales Corp.</u>, 21 F.3d 502, 510 (2d Cir. 1994); <u>Keene Corp. v. United States</u>, 700 F.2d 836, 841 (2d Cir. 1983).

Here, the complaint does not allege that either Matthew or Lili Burgess complied with the requirements of the FTCA.  Specifically, there is no allegation that they presented notice of their disputes in writing to the DOE. At most, Mr. Burgess sent a check stating that endorsement and deposit of the check would constitute an agreement that he had fully and finally paid his student loans.  Although it soon became apparent that the defendants were disputing his claim of final payment, there is no indication that Mr. Burgess provided a written response or a precise claim for damages. Similarly, the complaint does not allege compliance with the FTCA after the Burgesses' tax refunds were partially withheld.  Because, based upon the allegations in the complaint, it does not appear that the Burgesses complied

with the requirements of the FTCA, their conversion claim should be DISMISSED without prejudice.

   D.  Count 4: Lili Burgess's Due Process Claim

   In Count 4, Lili Burgess contends that she was denied notice and an opportunity to be heard with respect to the withholding of her tax refund.  As noted above, federal agencies cannot be sued for constitutional violations.  See Platsky v. C.I.A., 953 F.2d 26, 28 (2d Cir. 1991); Keene Corp. v. United States, 700 F.2d 836, 845 n.13 (2d Cir.), cert. denied, 464 U.S. 864 (1983). While this rule may lead to harsh results, the Supreme Court has clearly stated that it is the role of Congress, and not the judiciary, to determine the scope of the federal government's liability.  Meyer, 510 U.S. at 486.

   Moreover, the reasons supporting dismissal of Count 1 also apply to Count 4.  There is no indication that DOE knew Lili Burgess existed, or that she might be affected by collection activity against her husband.  Ms. Burgess's recourse appears to lie with the Treasury Department, and according to the defendants the Treasury Department has a form for resolving precisely this situation.  I therefore recommend that Count 4 be

DISMISSED without prejudice.

    E.   Count 5: Lili Burgess's Injunctive Relief Claim

    Count 5 seeks an order compelling the defendants to
contact various credit reporting agencies and inform them
that "the report of an existing indebtedness was wrong,
incorrect and unlawful."  (Paper 1 at 8).  As noted
above, the HEA does not permit claims for injunctive
relief against the Secretary of Education.  28 U.S.C. §
2679;  see De La Mota v. U.S. Dep't of Educ., 2003 WL
21919774, at *4 (S.D.N.Y. Aug. 12, 2003).[3]  "The Supreme
Court has instructed that 'when Congress attaches
conditions to legislation waiving the sovereign immunity
of the United States, those conditions must be strictly
observed and exceptions thereto are not to be lightly
implied.'"  De La Mota, 2003 WL 21919774, at *4 (quoting
Block v. North Dakota, 461 U.S. 273, 287 (1983)).
Because the HEA bars injunctive relief, the defendants'
sovereign immunity has not been waived and this Court has

_____

[3]  The Court notes that the Secretary of Education is not a named party.
Instead, the defendants in this case are federal agencies.  Such agencies
are plainly protected by sovereign immunity.  See Meyer, 510 U.S. at 475.
Even assuming, arguendo, that the Burgesses had named the Secretary as a
party, the bar on injunctive relief would likely apply since collection of
a student loan debt is within the scope of the Secretary's authority.  See
Shabtai v. United States Dep't of Educ., 2003 WL 21983025, at *7 (S.D.N.Y.
Aug. 20, 2003).

no jurisdiction to hear this claim.  Id.

F.  Count 6: Defamation of Credit

The Burgesses' last claim is that the defendants defamed their credit.  In essence, the Burgesses allege that credit reporting agencies were told, incorrectly, that Matthew Burgess owed the federal government money.  These alleged statements were defamatory, and the resulting damage was an injury to the Burgesses' credit score.

Because defamation is a tort, it falls within the purview of the FTCA.  However, the FTCA does not permit suits for libel and slander.  See 28 U.S.C. § 2680(h); Prestop v. Hamlett, 2001 WL 363676, at *6 (S.D.N.Y. 2001) ("FTCA's limited waiver of immunity does not apply to actions for libel or slander; defamation actions are expressly prohibited under the statute.").  Furthermore, as discussed above, the Burgesses have not exhausted the administrative requirements of the FTCA.  Consequently, this Court does not have jurisdiction to hear their defamation claim.

V.  Plaintiffs' Arguments in Opposition

In response to the motion to dismiss, the Burgesses

contend that the Court has jurisdiction because their suit was filed after collection had been completed.  To support their argument, the Burgesses rely upon Nelson v. Regan, 731 F.2d 105 (2d Cir. 1984), abrogated by Sorenson v. Sec'y of Treasury of U.S., 475 U.S. 851 (1986), in which taxpayers brought a class action claiming that a "tax intercept" program deprived them of due process. The Nelson defendants first asserted sovereign immunity, arguing that prior to filing suit the plaintiffs were required to submit an administrative claim to the Treasury Department alleging that a tax had been "erroneously or illegally assessed or collected." Nelson, 731 F.2d at 109 (quoting 26 U.S.C. § 7422(a)). The Second Circuit disagreed, concluding that the plaintiffs were not claiming illegal assessment or collection, but instead were asserting their rights to full tax refunds.  Accordingly, the court found that the procedural requirement in 26 U.S.C. § 7422 did not apply.

     This portion of the Nelson ruling has no application here.  In this case, the HEA has carved injunctive relief out of its sovereign immunity waiver, and has required that all tort claims follow the dictates of the FTCA.

Indeed, the HEA's limited waiver of sovereign immunity is clearly different from the waiver set forth in the tax statute at issue in Nelson.

The Nelson decision also rejected the argument that no action "with respect to Federal taxes" could be brought under the Declaratory Judgment Act.  Id.  The defendants in this case have not made such an argument, and have not yet opposed Matthew Burgess's right to a declaratory judgment.  As discussed above, Lili Burgess may also be entitled to a declaratory judgment resulting from the government's conduct, but her cause of action does not lie against the DOE.

The Burgesses' final argument under Nelson is that the Second Circuit upheld the right of plaintiffs to sue for a lack of notice and the right to be heard.  This part of the Nelson decision pertained to the argument that no injunctive relief could be granted since an adequate remedy was available in the form of a suit for a refund.  Id. at 110.  Again, this argument has not been asserted here, primarily because the HEA explicitly bars claims for injunctive relief.  Accordingly, the Nelson decision is inapposite, and does not control the

21

outcome in this case.

The Burgesses next argue that there is case law
supporting the right to bring a declaratory judgment
under the HEA.  As discussed previously, the defendants
have not opposed Matthew Burgess's right to bring a
declaratory action under the HEA.  In opposing Count 1 of
the complaint, the defendants only argue that Lili
Burgess's claims are misplaced.  Therefore, the Court
does not need to address the validity of the Burgesses'
argument on this point.

The Burgesses' last argument is that the
administrative requirements of the FTCA should not apply
in this case.  First, they contend that the complaint,
when liberally construed and "taken as a whole," shows
that the defendants had an opportunity to review the
claims at issue prior to litigation.  (Paper 21 at 5).
The Burgesses also argue that it would be in the
interests of judicial economy to hear their tort claims
at this time.

As discussed in the analysis of Count 3 above, even
a liberal reading of the complaint does not reveal facts
showing compliance with the FTCA.  Moreover, and

22

notwithstanding the Court's interest in preserving judicial resources, FTCA compliance is jurisdictional and cannot be waived.  <u>Keene Corp.</u>, 700 F.2d at 841.  The Burgesses' arguments with respect to the FTCA are, therefore, without merit.

<u>Conclusion</u>

For the reasons set forth above, I recommend that the defendants' motion to dismiss (Paper 15) be GRANTED, that all claims of plaintiff Lili Burgess be DISMISSED without prejudice, and that plaintiff Matthew Burgess's claims in Counts 2 through 5 be DISMISSED without prejudice.

Dated at Burlington, in the District of Vermont, this 10th day of February, 2006.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).